UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-20169-SMITH/LOUIS

MAXIMO DORRA,

    Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

    Defendant.

    _____/

# ORDER

**THIS CAUSE** is before the Court on Plaintiff Maximo Dorra's ("Plaintiff") Motion for Partial Summary Judgment, filed on June 10, 2019 (ECF No. 32) ("Motion"). Defendant Rockhill Insurance Company ("Defendant") filed its Response on June 24, 2019 (ECF No. 40) ("Response"). Plaintiff did not file a reply. The Court has carefully reviewed the Motion, the Response, all supporting and opposing submissions, and the record as a whole. For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

On September 10, 2017, Hurricane Irma made landfall on South Florida, causing damage to property then owned by Plaintiff located at 16426 NE 32nd Avenue, North Miami Beach, Miami-

---

[1] The facts herein are taken from Plaintiff's Statement of Undisputed Material Facts in Support of its Motion (ECF No. 31). Defendant did not file a statement of material facts in opposition or otherwise oppose Plaintiff's facts, noting that it relies upon Plaintiff's set of facts for its Response. Resp. at 1 n.1. Local Rule 56.1(b) provides that the movant's statement of facts will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record. *See also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion."). "This rule serves a vital purpose in helping the court identify and organize the issues in the case." *Azze v. Dade Med. Coll., Inc.*, No. 15-CV-24175, 2017 WL 880426, at *2 (S.D. Fla. Mar. 6, 2017) (internal citations omitted). Having reviewed Plaintiff's set of facts in light of Defendant's lack of opposition, the Court deems them admitted to the extent they are supported by the record evidence.

1

Dade County, FL 33160 (the "Property") (ECF No. 31-2 at ¶¶ 4-5). The Property was covered for hurricane-related damages by Plaintiff's insurance policy with Defendant, Policy Number RCPKORC01057301 (the "Policy"), with effective dates of May 11, 2017 to May 11, 2018 (ECF No. 10 at 6-7; ECF No. 31-1 at 13). As set forth in the statement of undisputed material facts, the Policy contains the following relevant provisions:

> SECTION I – PERILS INSURED AGAINST
>
> A. Coverage A – Dwelling And Coverage B – Other Structures
>
> 1. We insure against direct physical loss to property described in Coverages A and B.
>
> (…)
>
> SECTION I – CONDITIONS
>
> C. Duties After Loss
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent, except that a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.) This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition, including any amendment to that condition.
>
> (…)
>
> 5. Cooperate with us in the investigation of a claim;
>
> (…)
>
> 7. As often as we reasonably require:

a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same.

   (…)

   H. Suit Against Us
   No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

(ECF No. 31-1).

On November 29, 2017, Plaintiff or his public adjuster reported a claim to Defendant that Hurricane Irma had damaged the Property (ECF No. 31-2 at ¶ 5; ECF No. 31-3 at 16). Defendant assigned the loss to claim number PR-0000000-192587 (the "Claim") and inspected the Property three times on or about December 14, 2017, September 27, 2018, and February 20, 2018 (ECF No. 31-2 at ¶ 6). Defendant did not send to Plaintiff any correspondence requesting documents, any notification that Plaintiff had failed to timely report his claim, or any notification that Plaintiff had failed to cooperate with Defendant in its investigation of the claim (*id.* at ¶¶ 13-15).

On February 27, 2018, Defendant paid Plaintiff in the amount of $143.43, which was the difference in Defendant's estimate of the Property's damage ($12,948.39) minus the deductible ($12,690.00) (*id.* at ¶ 7). A portion of this payment was to go towards repairing, but not replacing, the Property's roof (*id.* at ¶ 8).

On November 8, 2018, Plaintiff through counsel sent Defendant correspondence which conveyed Plaintiff's disagreement with Defendant's assessment of the damages and requested additional payment (*id.* at ¶ 10). The letter states as follows:

   Please be advised that the Insured does not agree with Rockhill Insurance Company's assessment of the damages in this claim as falling under the hurricane deductible. At this time, the Insured is requesting a supplemental payment. This

> supplemental payment request is a request for additional sums under the initial claim, **not a supplemental claim**. A copy of the Insured's supporting estimate is attached hereto. If Rockhill does not respond to this correspondence within 3 business days, it will be assumed that Rockhill does not agree with the Insured's request. As such, the Insured will pursue any and all available legal remedies.

(ECF No. 31-2 at 10) (emphasis in original). Plaintiff's sworn affidavits additionally explain that Plaintiff was not requesting that Defendant compensate him for any new damages apart from what he requested in his initial claim (*id.* at ¶ 11). Defendant never responded to Plaintiff's correspondence (ECF No. 31-2 at ¶ 12).

Eleven days later, Plaintiff filed this action against Defendant on November 19, 2018, in state court. The case was removed to federal court on January 11, 2019, based on diversity jurisdiction (ECF No. 1). The operative Amended Complaint brings one count against Defendant for breach of contract, alleging that Defendant had breached the Policy by refusing to pay the amount of the insurance proceeds due to Plaintiff as a result of the damages to the Property (ECF No. 8). Defendant filed its Answer, Affirmative Defenses, and Counterclaim on February 11, 2019, seeking declaratory relief that it does not owe Plaintiff any additional money under the Policy (ECF No. 10). The present Motion was filed on June 10, 2019 (ECF No. 32).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court

must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

The introduction to Plaintiff's Motion states that it seeks summary judgment in his favor on three issues: (1) that Defendant waived compliance with further policy conditions and requirements when it concluded its investigation into Plaintiff's claim and made payment to Plaintiff; (2) that Defendant breached the policy by failing to pay for a full roof replacement on the Property; and (3) that Plaintiff is entitled to further insurance proceeds in addition to the $143.43 paid by Defendant to Plaintiff. But the body of the Motion more specifically seeks summary judgment on four of Defendant's affirmative defenses that allege Plaintiff's failure to comply with the Policy's pre-suit obligations to (1) provide prompt notice of the loss (Third Affirmative Defense); (2) provide documentation requested (Fourth Affirmative Defense); (3) cooperate (Fifth Affirmative Defense); and (4) comply with all post-loss/pre-suit policy

5

obligations before bringing suit against Defendant (Sixth Affirmative Defense) (collectively, "Post-Loss Affirmative Defenses"); as well as partial summary judgment on Plaintiff's breach of contract claim and Defendant's counterclaim for declaratory relief. Because discussion of whether summary judgment is appropriate for the Post-Loss Affirmative Defenses, Plaintiff's breach of contract claim, and Defendant's counterclaim, necessarily encompasses discussion of Plaintiff's three stated issues (waiver, breach of policy, additional monies), the Court has organized its analysis by the defenses and claims.

### A. Post-Loss Affirmative Defenses (Third, Fourth, Fifth, and Sixth Affirmative Defenses)

Plaintiff asserts that he is entitled to summary judgment on the Post-Loss Affirmative Defenses in his favor for three reasons: (1) Defendant's acknowledgement of coverage and payment under the Policy constitutes a waiver of further compliance with Policy conditions precedent; (2) Plaintiff requested an additional payment of his initial claim from Defendant, not a supplemental claim, and therefore Plaintiff was not required to comply with post-loss obligations; and (3) Plaintiff was not obligated to comply with post-loss policy obligations because Defendant never requested compliance with same. In response, Defendant avers that Plaintiff violated the Policy's post-loss duties, thereby foreclosing him from any further recovery under the Policy.

The main point of contention between the parties lies in Plaintiff's second argument: whether Plaintiff's request for additional monies on November 8, 2018, was a request for additional payment to the initial claim (Plaintiff's characterization) or whether the request was a separate, supplemental claim (Defendant's characterization). Plaintiff maintains that his request for more damages was an extension of his initial claim. Because Plaintiff complied with his post-lost obligations prior to his initial claim, he contends that he was not obligated to follow these obligations again for his new request. Defendant, on the other hand, characterizes Plaintiff's

6

request as a new, supplemental claim which required Plaintiff to comply with post-loss obligations before filing suit. More specifically, Defendant contends that Plaintiff's failure to afford Defendant ninety days to consider his request for more damages precludes his right to recover under the Policy. Thus, there is no present dispute between the parties as to whether an insured under the Policy must comply with post-loss obligations, but only a dispute as to whether Plaintiff was required to comply with any additional obligations under the circumstances.

The Policy defines a "supplemental claim" in its "Special Provisions – Florida" section as follows:

> Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.

(ECF No. 31-1 at 53). The term also appears in the context of loss payment, with the Policy warranting that the insurer will pay the insured's loss, "[i]f payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim" (*id.* at 55). Another reference to supplemental claims can be found in the context of post-loss obligations, with the Policy stating that, notwithstanding a three-year period to file a supplemental claim for hurricane damage from the time of the storm's landfall, the provision "does not affect any limitation for legal action against us as provided in this policy under the Suit Against Us Condition" (i*d.* at 53). Outside of these references, further explanation for what constitutes a supplemental claim under the Policy is nowhere to be found.

Florida[2] courts that have examined the meaning of a "supplemental claim" have generally found that it refers to an additional claim for damages discovered in the covered reconstruction or

---

[2] Because this Court sits in diversity in this case, it must apply the law of the forum state, which is Florida. *See Living Legends Ret. Ctr., Inc. v. Lexington Ins. Co.*, 208 F. App'x 805, 807 (11th Cir. 2006) ("The district court ruling in this case turned on the interpretation of an insurance contract. Since the court was sitting in diversity, it applied the law of the forum state, Florida.").

7

repair. *See, e.g., Milhomme v. Tower Hill Signature Ins. Co.*, 227 So. 3d 724, 725 (Fla. 3d DCA 2017) (defining "supplemental claim" as "damages discovered in the covered reconstruction and repair;" finding insured's request for additional damages was not a supplemental claim because it referred to the original claim and causality event); *Francis v. Tower Hill Prime Ins. Co.*, 224 So. 3d 259, 261 (Fla. 3d DCA 2017) (same); *Slayton v. Universal Prop. & Cas. Ins. Co.*, 103 So. 3d 934, 936 (Fla. 5th DCA 2012) (same).

Here, the evidence supports Plaintiff's characterization of his request as a request for additional monies under his initial claim, not a supplemental claim. Under the plain language of the Policy, a supplemental claim is an "additional claim for recovery" under the same hurricane as the initial claim. The correspondence sent from Plaintiff to Defendant makes very clear that it is not seeking to file an additional, supplemental claim for recovery, but rather disputes Defendant's assessment of its original, initial claim and seeks further payment (ECF No. 31-2 at 10) ("This supplemental payment request is a request for additional sums under the initial claim, **not a supplemental claim**.") (emphasis in original). Plaintiff is not seeking payment for any newly discovered loss, but rather is seeking a higher payment for the loss that Defendant already adjusted—namely, damage to the Property's roof.

Accordingly, Defendant's four Post-Loss Affirmative Defenses can only apply to Plaintiff's initial claim made on November 29, 2017. *See State Farm Florida Insurance Company v. Cardelles*, 159 So. 3d 239, 241-42 (Fla. 3d DCA 2015) (affirming lower court's finding that plaintiff was not required to comply with post loss policy obligations where damages sought were the same as those claimed from the original hurricane).

Based on the record evidence, the Court agrees with both of Plaintiff's arguments: that Defendant's acknowledgement of coverage and payment under the Policy constitutes a waiver of

8

further compliance with Policy conditions precedent; and that Plaintiff was not obligated to comply with post-loss policy obligations where Defendant never requested compliance. It is well-settled law that when an insurer agrees upon liability by accepting payment on a claim, the insurer has waived further policy obligations of the insured. *See Bear v. New Jersey Ins. Co.*, 138 Fla. 298, 189 So. 252 (1939); *English & Am. Ins. Co. v. Swain Groves, Inc.* 218 So.2d 453 (Fla. 4th DCA 1969); *Llerena v. Lumbermens Mut. Cas. Co.*, 379 So.2d 166 (Fla. 3d DCA 1980)). Here, Defendant accepted liability over Plaintiff's claim and paid Plaintiff $143.43, thereby waiving any further compliance with any post-loss obligations from the Policy, as well as Defendant's affirmative defense that Plaintiff failed to provide prompt notice of the loss. Moreover, Defendant does not dispute or otherwise challenge Plaintiff's claim that Defendant never requested compliance with any post-loss obligations or advised Plaintiff that he had failed to timely report the loss (ECF No. 31-2 at ¶¶ 13-15).

Because there is an absence of any genuine issue of material fact and because Plaintiff is entitled to summary judgment as a matter of law, the Court grants summary judgment in Plaintiff's favor on Defendant's Third, Fourth, Fifth, and Sixth Affirmative Defenses.

### B. Breach of Contract (Count One) / Declaratory Relief (Counterclaim One)

Plaintiff additionally seeks summary judgment on his breach of contract claim and on Defendant's counterclaim for declaratory relief, asking the Court to find that Defendant breached the Policy by failing to pay for a fill roof replacement, and that Plaintiff is entitled to further insurance proceeds. In support of its argument, Plaintiff submitted the affidavit of Robert Nielsen, who had inspected the Property on December 3, 2018 (ECF No. 31-5). Mr. Nielsen opined that the roof was more than 25% damaged by Hurricane Irma and would thus require a permit in order to make repairs (*id.* at ¶¶ 10-11). Mr. Nielsen further claimed that, pursuant to the Florida Building

Code, the roof tiles and other roofing components must have a "valid and current product approval," which the Property's existing tiles do not have (*id.* at ¶¶ 12-13). Mr. Nielsen therefore concluded that a full roof replacement would be required on the Property, which would cost $45,500, and was not sufficiently provided by Defendant's estimate (*id.* at ¶¶ 15-16, 20-21). Defendant does not dispute any of these claims, but maintains that Plaintiff has violated the Policy's post-loss condition precedent to further recovery. Defendant also argues that Mr. Nielsen's investigation and report took place after Plaintiff filed suit, and thus cannot form the basis for Plaintiff's breach of contract claim.

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs, Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). There is no dispute as to the existence of a valid contract; rather the issues presented involve whether there was a material breach and damages.

Upon careful consideration of the record, the vast differences in the parties' estimates raise issues of material fact about the comparability of the two estimates and about which estimate more accurately reflects the costs to repair the damages to the Property. Defendant estimated costs to repair the damaged property at $12,948.39 minus the deductible of $12,690.00, for a net estimate of $143.43 (ECF No. 31-2). Specifically, this estimate allotted $856.03 to repair the Property's roof, before application of the deductible (*id.* at 5-6). Defendant of course contends that it owes Plaintiff no further payment under the Policy. In contrast, Plaintiff's own preliminary estimate attached to his November 8, 2018 correspondence to Defendant estimates the total damages at $107,144.31, with $32,613.15 allotted to the roof, and without taking into account any deductible amounts. Plaintiff has also advanced the affidavit of Mr. Nielsen, which presents different figures: over $2,000.00 to make repairs, or $45,500.00 to replace the roof (ECF No. 31-5 at ¶¶ 9, 16).

Because these figures are so far off from one another, even in Plaintiff's own estimates, the issue of whether Defendant has underpaid Plaintiff is best left for the jury.

Accordingly, the Court denies Plaintiff's motion for partial summary judgment with respect to Count 1 of the Amended Complaint and Counterclaim 1 of the Counterclaim.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** in Plaintiff's favor as to Defendant's Third, Fourth, Fifth, and Sixth Affirmative Defenses. Summary judgment is **DENIED** as to Count 1 of the Amended Complaint and Counterclaim 1 of the Counterclaim.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 9th day of September, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE